(February 24, 1992)

■ In the Matter of W. DONALD CAROLA, Respondent, v SARATOGA COUNTY BOARD OF ELECTIONS, Respondent, and MARTIN A. CARBONE, Appellant.—Per Curiam. Appeal from an order of the Supreme Court (Plumadore, J.), entered January 8, 1992 in Saratoga County, which partially granted petitioner's application, in a proceeding pursuant to Election Law § 16-106, to, *inter alia,* recanvass certain absentee and affidavit ballots cast at the November 5, 1991 general election for the office of City Judge of the City of Mechanicville.

Petitioner and respondent Martin A. Carbone (hereinafter respondent) were both candidates for the office of City Judge

of the City of Mechanicville in Saratoga County in the November 5, 1991 general election. Petitioner ran on both the Republican Party and the Conservative-Axes Taxes Party lines and respondent ran on the Democratic Party and the Appreciative Party lines. After the election and upon a recanvass of the votes by respondent Saratoga County Board of Elections (hereinafter the Board), respondent was declared the winner with a total vote of 1,142, as compared to petitioner's total of 1,138. Petitioner then commenced this proceeding to challenge the results of the recanvass. After a hearing, Supreme Court accepted some of petitioner's challenges while rejecting certain others. As a result, petitioner received an additional two votes, increasing his total to 1,140, whereas respondent suffered a net loss of three votes, reducing his total to 1,139 votes. Petitioner was therefore declared the new winner. Respondent appeals, disputing four of Supreme Court's determinations adverse to him. Petitioner "cross-appeals" from so much of Supreme Court's order which ruled valid a certain ballot cast for respondent. Supreme Court stayed implementation of its order pending this appeal. We turn to the determinations that are in dispute.

First, we agree with Supreme Court's decision not to count the affidavit ballot cast by Thomas Connors. Prior to October 1991, Connors lived with his parents at their residence in the Town of Halfmoon, Saratoga County. Although Connors had intended to move to an apartment situated within election district No. 2 of the City in October 1991, Connors became ill, the contemplated move did not take place and Connors had not established a residence within the City as of the time of the election. As such, he was not qualified to vote in a City election (see, Election Law § 1-104 [22]; § 5-102 [1]; *Matter of Williams v Rensselaer County Bd. of Elections*, 98 AD2d 938, 939, *appeal dismissed* 61 NY2d 737, *lv denied* 61 NY2d 606).

Second, it is our view that Supreme Court erred in its determination to count the affidavit ballot of Cecilia Coreno. Coreno moved from a residence within election district No. 5 of the City to one within election district No. 2 and in August 1991 transferred her registration accordingly. On election day, Coreno presented herself at the polling place for election district No. 1 and not the one designated for election district No. 2. She testified that at the polling place for election district No. 1 she was directed to proceed to the polling place for election district No. 5. When she presented herself at the latter, she was permitted to vote by affidavit ballot pursuant to Election Law § 8-302. However, Coreno did not claim to

have a current residence within election district No. 5 and, in fact, indicated to the contrary on the affidavit ballot envelope. That being the case, even if we were to credit Coreno's testimony that she followed the Board's explicit directions in presenting herself first to the polling place for election district No. 1 and then the polling place for election district No. 5, her inability to fulfill the requirements of Election Law § 8-302 (3) (f) (ii) required that her vote be disallowed (see, Matter of McClure v D'Apice, 116 AD2d 721, 723; Matter of Roe v Palmer, 101 Misc 2d 1051, 1055).

Third, we agree with Supreme Court's conclusion to count a vote cast for petitioner by a paper ballot received in evidence as petitioner's exhibit No. 4. As earlier noted, petitioner ran for the office of City Judge as the candidate of two different parties. His name was on row B of the ballot as the Republican Party candidate and on row C as the candidate of the Conservative-Axes Taxes Party. In this case, the voter marked the voting square before petitioner's name on both rows, but erased the mark in the voting square on row C, leaving the mark in the voting square on row B. We acknowledge that the literal wording of Election Law § 9-112 (1), considered alone and without reference to the remainder of the section, could be interpreted so as to render the ballot blank as to the office of City Judge, as urged by respondent. However, considered together with the provision of Election Law § 9-112 (4),[1] this interpretation is irrational. If the mark in the voting square before petitioner's name on row C was either present or absent, the vote on row B would be counted for petitioner. An interpretation of Election Law § 9-112 which brings about a different result because the mark on row C has been erased is patently absurd.

Fourth, we disagree with Supreme Court's determination not to count a ballot cast for respondent which was marked in green ink. Initially, we note that the record gives no indication whether this was intended to be an absentee, affidavit or emergency ballot. However, because the ballot is headed "OFFICIAL ABSENTEE BALLOT for GENERAL * * * ELECTION",[2] con-

---

1. Election Law § 9-112 (4) states in pertinent part that: "If, in the case of a candidate whose name appears on the ballot more than once for the same office, the voter shall make a [mark] in each of two or more voting squares before the candidate's name, * * * only the first vote shall be counted for such candidate."

2. The heading is not of itself dispositive because the same form of ballot was used for the affidavit ballots previously considered.

tains instructions as set forth in Election Law § 7-122 (1) (d), and was treated by the parties and Supreme Court as an absentee ballot, we shall also treat it as such. Although, to the extent practicable, ballots for absentee voters are to be in the same form as those to be voted in the district on election day (Election Law § 7-122 [1] [a]), the Legislature has made separate provisions for the form of absentee ballots (Election Law § 7-122 [1] [b], [c], [d]) and of paper ballots used at polling places (Election Law § 7-106). Of greatest significance here is the distinction in the prescribed method of marking by the voter. A paper ballot is to contain the following instruction: "(1) Mark only with a pen *having blue or black ink* or with a pencil having black lead" (Election Law § 7-106 [5] [emphasis supplied]; *see,* Election Law § 8-312 [1]). In contrast, an absentee ballot is to contain the following instruction: "1. Mark in pen or pencil" (Election Law § 7-122 [1] [d]), with no color specified. That is the very instruction which was set forth on the ballot in question here.

Any question as to whether the Legislature intended the distinction is resolved by the legislative history of Election Law § 7-122. Prior to March 7, 1978, the statutorily prescribed instructions on an absentee ballot required that it too be marked with a "pen having blue or black ink or with a pencil having black lead" (L 1978, ch 9, § 57), as in the case of a regular paper ballot. The Legislature having amended the statute so as to eliminate the color specification, it necessarily follows that a voter may now mark an absentee ballot in any legible color of ink *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 193). As it relates to ink color, the general requirement of Election Law § 8-410 that an "absentee voter shall mark an absentee ballot as provided for paper ballots" is of necessity overruled by the specific provision of Election Law § 7-122 (1) (d) *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 238). The case of *Matter of Nicolaysen v D'Apice* (100 AD2d 501, *cross appeal dismissed* 62 NY2d 976), relied upon by petitioner, does not compel a contrary result.

Finally, we agree with Supreme Court's rejection of petitioner's challenge to an absentee ballot containing what he describes as "an indistinguishable scribble" rather than "a cross X mark or a check V mark" (Election Law § 9-112 [1]) in respondent's voting square. "No ballot shall be declared void or partially blank because a mark thereon is irregular in form" (Election Law § 9-112 [1]).

As a result of our determination, petitioner's count is re-

duced by one vote[3] and respondent's count is increased by one vote, bringing about a 1,140 to 1,139 victory for respondent.

Weiss, P. J., Levine, Mercure, Mahoney and Casey, JJ., concur. Ordered that the order is reversed, on the law, without costs, and respondent Saratoga County Board of Elections is hereby directed to recanvass and recount the votes for the office of City Judge of the City of Mechanicville, and upon said recanvass and recount declare that respondent Martin A. Carbone received a total of 1,140 votes and petitioner received a total of 1,139 votes, and said Board of Elections is hereby directed to reaffirm its statement of November 13, 1991 declaring Martin A. Carbone to have been elected to the office of City Judge of the City of Mechanicville.

(February 26, 1992)

---

**3.** Although Coreno's ballot envelope was never opened, for reasons not disclosed by the record Supreme Court counted her vote for petitioner.